**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**DELTA DIVISION**

AARON FLEMONS                                                                                    PLAINTIFF
ADC #119749

v.                                              2:22-cv-00176-LPR-JJV

MARCUS ETHERLY, Captain,
EARU Maximum Security Unit, *et al.*                                            DEFENDANTS

<u>**RECOMMENDED DISPOSITION**</u>

The following Recommended Disposition ("Recommendation") has been sent to United

States District Judge Lee P. Rudofsky.   Any party may serve and file written objections to this

Recommendation.   Objections should be specific and include the factual or legal basis for the

objection.   If the objection is to a factual finding, specifically identify that finding and the

evidence that supports your objection.   Your objections must be received in the office of the

United States District Court Clerk no later than fourteen (14) days from the date of this

Recommendation.   Failure to file timely objections may result in a waiver of the right to appeal

questions of fact.

I.       **INTRODUCTION**

Aaron Flemons ("Plaintiff") is a prisoner in the East Arkansas Regional Unit ("EARU") of

the Arkansas Division of Correction ("ADC").   He has filed this *pro se* lawsuit seeking relief for

constitutional violations, under 42 U.S.C. § 1983, and for medical malpractice, under Ark. Code

Ann. § 16-14-201 *et seq*.   Plaintiff's remaining claims are that from July 27, 2022 to September

4, 2022: (1) Defendants Captain Marcus Etherly and Lieutenant Morieon Kelly ("ADC

Defendants" subjected him to unconstitutional conditions of confinement by forcing him to live in

a dirty cell; (2) Defendant Ethery denied him constitutionally adequate medical care for scabies;

1

and (3) Defendants Director of Nursing Angela Douglas and Health Services Administrator Emma Hatchett ("Medical Defendants") violated the Eighth Amendment and committed medical malpractice because they knew he was not receiving proper care for scabies but failed to take corrective action.[1]    (Doc. 1, Doc. 120.)    Plaintiff brings these claims against Defendants in their official and personal capacities.    And he seeks damages as well as injunctive relief.

Medical Defendants and ADC Defendants have filed separate Motions for Summary Judgment.    (Docs. 125-130.)    Plaintiff has responded to both.    (Docs. 139-145.)    After careful consideration and for the following reasons, I recommend the Motions be GRANTED, Plaintiff's remaining claims be DISMISSED with prejudice, and this case be CLOSED.

## II.    SUMMARY JUDGEMENT STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, demonstrates there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.    *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).    The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact.    *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party cannot rest on mere denials or allegations in the pleadings, but instead, must come forward with evidence supporting each element of the claim and demonstrating there is a genuine dispute of material fact for trial.    *See* Fed R. Civ. P. 56(c); *Celotex*, 477 U.S at 322; *Holden v. Hirner,* 663 F.3d 336, 340 (8th Cir. 2011).    In this regard, a factual dispute is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party."    *Greater St. Louis Constr. Laborers Welfare Fund v. B.F.W. Contracting, LLC,* 76 F.4th 753, 757 (8th Cir. 2023).

---

[1]  All other claims have been dismissed without prejudice.   (Doc. 120.)

III.    FACTS[2]

In July 2022, Plaintiff lived in general population at the EARU.   (Doc. 128-1, Doc. 125-4 at 25-26, Doc. 128-5)   On July 27, 2022, he was moved to the Max Unit, Isolation 2, cell M38L for disciplinary reasons.   (*Id.*)   The ADC Defendants say the cell was thoroughly cleaned before Plaintiff arrived.   (Doc. 128-1, Doc. 128-2, Doc. 128-3, Doc. 128-5.)   But Plaintiff says trash, dirt, grime, food, and feces were "everywhere."   (Doc. 128-4 at 156.)   Plaintiff also says Captain Etherly and Lieutenant Kelly saw the condition of his cell, forced him to stay in it, and did not give him cleaning supplies.   (*Id.*)   But Captain Etherly and Lieutenant Kelly deny these allegations.   (Doc. 128-1, Doc. 128-2, Doc. 128-5.)   The parties agree Plaintiff received weekly cleaning supplies on August 2, 4, 10, and 12, 2022.   (Doc. 128-3, Doc. 128-4 at 19-21, Doc. 128-5).   And Plaintiff did not report any skin problems during daily rounds or when he was seen in the infirmary on July 28, 2022 for an unrelated matter.   (Doc. 127-1, Doc. 128-4 at 27-36, Doc. 128-6 at 24).

On August 21, 2022, Plaintiff moved out of isolation to Max 3, bed CB20.   (Doc. 128-1, Doc. 128-5.)   Plaintiff does not claim this cell was dirty, and it is undisputed he received cleaning supplies on August 22, 2022.   (Doc. 128-4 at 21-22, Doc. 128-5.)   On the same day, Plaintiff says

---

[2] In their summary judgment papers, the parties discuss events beginning on July 27, 2022 and continuing long after Plaintiff filed this lawsuit on September 22, 2022.   However, when ruling on the issue of exhaustion, the Honorable Lee P. Rudofsky, United States District Court Judge, concluded: "Plaintiff's claims against Medical Defendants Douglas and Hatchett are limited to those allegations concerning events that occurred prior to September 4, 2022."   (Doc. 120 at 2) (emphasis added.)   Judge Rudofsky did not specifically mention ADC Defendants Ethery and Kelly.   However, because the grievance procedure for raising medical and nonmedical claims is virtually the same, that ruling would also apply to Plaintiff's claims against the ADC Defendants. And, it appears from the evidence provided by the parties, the ADC Defendants' involvement in this case ended before September 4, 2022.   The medical care Plaintiff received after this case was filed on September 22, 2022, is the subject of another lawsuit currently pending in this District. *See Flemmons v. Hatchett*, 2:23-cv-00123-BSM-ERE.

he told a non-party nurse he needed treatment for itchy bumps.   (Doc. 128-4 at 36-41.)

On August 23, 2022, Plaintiff moved to Max 3, cell CB13.   (Doc. 128-1, Doc. 128-5.) Plaintiff does not contend this cell was dirty, and he admits he received weekly cleaning supplies on August 26 and 29, 2022.   (Docs. 128-4 at 23, Doc. 128-5.)   Plaintiff says when he first arrived in this cell, he told Captain Etherly he wanted to see a nurse about possibly having scabies. (Doc. 128-4 at 43.)   But Captain Etherly denies this.   (Doc. 128-1.)   Plaintiff also says on August 23, 2022, he sent Administrator Hatchett a note saying he needed immediate treatment for scabies. (Doc. 142 at 1-2, 20.)   On an unspecified date, a non-party nurse wrote on that note that Plaintiff should file a sick call request on the proper form.   (*Id.*)   And Plaintiff says Administrator Hatchett also saw his note.   (*Id.*)

On August 24, 2022, Plaintiff filed a sick call request saying he "broke out in bumps after having moved in Max 3-20" and that he needed to be seen "ASAP" because the itching kept him from sleeping.   (Doc. 127-2.)   Later that day, Plaintiff went to the infirmary where a non-party LPN noted he had "white bumps" on his back, hands, feet, and behind his knees.   (*Id.*)   The LPN gave Plaintiff permethrin cream, which can be used to treat scabies, and hydrocortisone cream.[3] (*Id.,* Doc. 127-9, Doc. 128-4 at 40, 47.)   However, the medical records do not contain any diagnosis.   Instead of referring Plaintiff to an APRN, who could make a diagnosis, the LPN instructed Plaintiff to return to sick call if needed.   (*Id.*)   And the LPN did not notify prison workers to sanitize Plaintiff's cell, clothing, and linens, as was the protocol whenever scabies was diagnosed.

It is undisputed that, after September 4, 2022, LPNs and APRNs treated Plaintiff's skin

---

[3] The medical records say Plaintiff was seen by only one LPN, but Plaintiff says two LPNs were present.   (Docs. 127-2, Doc. 142 at 1-2.)   This factual dispute is immaterial.

condition several times.   (Docs. 127-4 through 127-9.)   However, they never diagnosed Plaintiff

has having scabies.   (*Id.*)   And no indications of scabies, such as burrowing or linear lesions,

were observed.   (*Id.*)

## IV.    MEDICAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.    Eighth Amendment Inadequate Medical Care Claim

To proceed to trial on his Eighth Amendment inadequate medical care claim, Plaintiff must

have evidence: (1) he had an objectively serious need for medical care; and (2) medical providers

subjectively knew of, but deliberately disregarded, that serious medical need.   *See Shipp v.

Murphy*, 9 F.4th 694, 703 (8th Cir. 2021); *Barr v. Pearson*, 909 F.3d 919, 921 (8th Cir. 2018).

Plaintiff is not alleging Defendants Hatchett or Douglas were directly involved in his medical care

during the relevant time period.   Instead, he is saying they failed to take corrective action after

learning he was receiving inadequate medical care from non-parties.    Thus, in addition to proving

the above two elements, Plaintiff must show Defendants Hatchett and Douglas had actual

knowledge he was receiving inadequate medical and failed, with deliberate indifference, to correct

it.   *See Marsh v. Phelps Cty.*, 902 F.3d 745, 754-57 (8th Cir. 2018).

As to the first element, the parties dispute whether Plaintiff had scabies.   Defendants have

produced a sworn affidavit from an internist who has treated scabies more than thirty times and a

sworn declaration from a non-party APRN who has experience in dealing with scabies in the ADC

and treated Plaintiff's skin condition at least two times during the relevant period in this lawsuit.

(Doc. 127-9, Doc. 127-8.)   Both experts say, in their professional medical opinions, Plaintiff did

not have scabies or any indications of that condition.   (*Id.*)   In his declaration and deposition,

Plaintiff says the LPNs who saw him on August 24, 2022, said he had scabies but someone in

disease control told the nurses not to tell anyone.   (Doc. 128-4 at 47; Doc. 142 at 1-2).   But

summary judgment cannot be defeated by reliance on this inadmissible hearsay.  *See Glover v. Bostrom*, 31 F.4th 601, 605 (8th Cir. 2022); *Mick v. Raines*, 883 F.3d 1075, 1080 (8th Cir. 2018). Because Plaintiff has not rebutted Defendants' expert opinions with any admissible evidence, I conclude no reasonable juror could find he had scabies.

That, however, does not end the analysis because an objectively serious medical need is defined as one diagnosed by a medical professional.  *Presson v. Reed,* 65 F.4th 357, 366 (8th Cir. 2023); *De Rossitte v. Correct Care Sols., LLC*., 22 F. 4th 796, 802 (8th Cir. 2022).  It is undisputed more than one medical provider diagnosed Plaintiff as having a skin condition that required medical treatment.  Thus, Plaintiff has sufficient evidence to support an objectively serious medical need.

The next issue is whether non-party medical providers were deliberately indifferent when treating that skin condition.  The short answer is no.  Deliberate indifference is a high threshold that goes well beyond negligence or gross negligence.  *Hall v. Higgins*, 77 F.4th 1171, 1179 (8th Cir. 2023); *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010).  To establish deliberate indifference, there must be evidence the defendants "recognized that a substantial risk of harm existed <u>and</u> knew that their conduct was inappropriate in light of that risk."  *Shipp,* 9 F.4th at 703 (emphasis in the original).  And, importantly, a mere disagreement with the course of medical care does not rise to the level of a constitutional violation.  *Hall*, 77 F.4th at 1179.

Defendants' medical experts say the non-party medical providers acted appropriately when they examined and treated Plaintiff's skin condition.  (Doc. 127-8, Doc. 127-9.)  And Plaintiff has not produced any contrary evidence.  "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that he did not feel he received adequate

treatment." *Cejvanovic v. Ludwick*, 923 F.3d 503, 508 (8th Cir. 2019).   Because there was no underlying constitutional violation to correct, Plaintiff's Eighth Amendment claim against Defendants Hatchett and Douglas fails as a matter of law.   *See Marsh,* 902 at 754-57; *Sims v. Lay,* Case No. 05-2136, 2007 WL 328769 at *1 (8th Cir. Feb. 2, 2007) (same).   Accordingly, I conclude Defendants Hatchett and Douglas are entitled to summary judgment, and I recommend Plaintiff's Eighth Amendment claim against them be dismissed with prejudice.

### B.    Arkansas Medical Malpractice Claim

The Arkansas Medical Malpractice Act provides, in relevant part, that "when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge," a plaintiff has the burden of proving, by expert testimony, the applicable standard of care, the defendants' breach, and proximate causation of an injury.   *See* Ark. Code Ann. § 16-114-206(a); *Dodd v. Sparks Reg'l Med. Ctr.,* 204 S.W.3d 579, 583 (Ark. App. 2005).   As argued by Defendants, the appropriate diagnosis and treatment of Plaintiff's skin condition are not matters of common knowledge.   And Plaintiff has not provided expert testimony to substantiate any of the required elements of his medical malpractice claim.

Plaintiff says he cannot do so because he is proceeding *pro se* and I denied his request for the appointment of counsel.   (Doc. 140.)   However, given the strength of Defendants' expert testimony which is clearly supported by the medical records and the lack of any evidence to substantiate Plaintiff's medical care claim, I conclude the appointment of counsel and/or an expert witness is unwarranted.   *See Rueben v. Outlaw*, Case No. 14-3819, 2015 WL 5449531 (8th Cir. Sept. 17, 2015) (affirming summary judgment when a prisoner failed to produce expert testimony to support his medical malpractice claim as required by Ark. Code Ann. § 16–114–206(a)); *Goodman v. United States*, 2 F.3d 291, 292-93 (8th Cir. 1993) (same).

For these reasons, I recommend summary judgment be granted and Plaintiff's medical malpractice claim against Defendants Hatchett and Douglas be dismissed with prejudice.   In the alternative, the Court could decline to exercise supplemental jurisdiction over this state law claim and dismiss it without prejudice.   *See* 28 U.S.C. § 1367(c)(3); *Williams v. Hobbs*, 658 F.3d 842, 843 (8th Cir. 2011).

## V.    ADC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.    Sovereign Immunity

Defendants Etherly and Kelly argue they are entitled to sovereign immunity from the Eighth Amendment claims raised against them in their official capacities.   The doctrine of sovereign immunity, which is derived from the Eleventh Amendment, precludes the recovery of monetary damages from state officials acting in their official capacities, unless the state has waived its immunity.   *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016).   It is undisputed Captain Etherly and Lieutenant Kelly are state officials.   And the State of Arkansas has not waived its Eleventh Amendment immunity.   *Burk v. Beene*, 948 F.2d 489, 493-94 (8th Cir. 1991).   Thus, Captain Etherly and Lieutenant Kelly are entitled to sovereign immunity from Plaintiff's request for <u>monetary damages</u> against them in their <u>official capacities</u>.   But sovereign immunity does not bar Plaintiff's request for injunctive relief from these two Defendants in their official capacities.   *See Johnson v. Griffin*, 69 F.4th 506, 512 (8th Cir. 2023); *Larson v. Kempker*, 414 F.3d 936, 939-40 (8th Cir. 2005).   And it does not prohibit his request for monetary damages from them in their personal capacities.

### B.    Qualified Immunity

Qualified immunity bars the recovery of monetary damages from government officials in their personal capacities if the official's conduct "does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019); *Irvin v. Richardson*, 20 F.4th 1199, 1204 (8th Cir. 2021). Whether qualified immunity applies to the case at hand is a question of law, not fact, for the court to decide. *Kelsay v. Ernest,* 933 F.3d 975, 981 (8th Cir. 2019). Thus, Defendants Etherly and Kelly are entitled to qualified immunity if: (1) the evidence, viewed in the light most favorable to Plaintiff, does not establish a violation of his Eighth Amendment rights; or (2) the particular Eighth Amendment right was not clearly established at the time of the alleged violation, such that a reasonable official would not have known that his or her actions were unlawful. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *MacKintrush v. Pulaski Cty. Sheriff's Dep't*, 987 F.3d 767, 770 (8th Cir. 2021). I will discuss qualified immunity as it applies to each Eighth Amendment claim separately.

### 1.    Inadequate Medical Care Claim

Plaintiff claims says on August 23, 2022, Captain Etherly violated his Eighth Amendment right to receive adequate medical care by ignoring his request to see medical personnel for treatment of what he believed to be scabies. (Doc. 128-4 at 43.) Captain Etherly denies doing so. (Doc. 128-1.) Even though there is a genuine issue of fact here, it is immaterial because the parties agree Plaintiff went to the infirmary on August 24, 2022. To avoid summary judgment, a prisoner must "place verifying medical evidence in the record to establish the detrimental effect of the alleged delay in medical treatment." *Redmond v. Kosinski*, 999 F.3d 1116, 11121 (8th Cir. 2021.) Because Plaintiff does not have any evidence he was harmed by the one-day delay in obtaining treatment, I conclude Captain Etherly is entitled to qualified immunity from Plaintiff's inadequate medical care claim under the first prong.

### 2.    Conditions of Confinement Claim

9

Plaintiff claims Captain Etherly and Lieutenant Kelly violated his Eighth Amendment rights by leaving him in a filthy cell for six days.   To defeat qualified immunity and proceed to trial on that claim, Plaintiff must have evidence that: (1) objectively, there was a substantial risk of serious harm to his health or safety; and (2) subjectively, Defendants Etherly and Kelly were aware of, but deliberately indifferent to, that risk.   *See Hamner v. Burls,* 937 F.3d 1171, 1178 (8th Cir. 2019).

Defendants Etherly and Kelly argue, <u>based on their evidence</u>, they are entitled to qualified immunity because cell M38L was thoroughly cleaned before Plaintiff arrived on July 27, 2022, they did not notice his cell was dirty on that day or during their daily walk throughs, and Plaintiff received weekly cleaning supplies thereafter.   (Doc. 128-1, Doc. 128-2, Doc. 128-3.)   But when considering qualified immunity, I must determine whether the evidence <u>viewed in the light most favorable to Plaintiff</u>, establishes a violation of a clearly established constitutional right.   *See MacKintrush,* 987 F.3d at 770; *see also Wright v. United States*, No. 12-3639, 2013 WL 6211744 (8th Cir. Nov. 29, 2013) (qualified immunity cannot be denied merely because there are factual issues; instead, the trial court must determine whether the plaintiff's evidence supports a clearly established constitution violation).

Plaintiff says in his deposition and sworn declaration, that cell M38L was filthy when he arrived on July 27, 2022.   And he claims both Defendants Etherly and Kelly saw the condition of the cell, forced him to move into it, and denied him cleaning supplies until six days later on August 2, 2022.   (Doc. 128-4 at 14-16, 19-21; Doc. 145.)   That testimony is sufficient to clear the deliberate indifference hurdle.   However, I conclude it falls short of the objectively serious element for the following reasons.

The United States Supreme Court has clarified that "extreme deprivations" are required to

sustain a conditions of confinement claim and that "only those deprivations denying the minimal civilized measure of life's necessities" are sufficient. *Hudson v. McMillain,* 503 U.S. 1, 8 (1992). Importantly, the length of time and the degree of filth are critical factors when determining whether there has been an objectively serious deprivation. *See Whitnack v. Douglas Cnty.*, 16 F.3d 954, 958 (8th Cir. 1994) (exposure to unsanitary conditions may "be tolerable for a few days and intolerably cruel for weeks or months").

For instance, in *Taylor v. Riojas*, 592 U.S. 7 (2020) (internal quotations omitted), a prisoner alleged that, for six days, he was held in "a pair of shockingly unsanitary cells" that were "covered, nearly floor to ceiling, in massive amounts of feces: all over the floor, the ceiling, the window, the walls, and even packed inside the water faucet." The cells were also "frigidly cold," contained "only a clogged drain in the floor to dispose of bodily wastes," and the inmate was forced to sleep naked on the floor in raw sewage. *Id.* Based on these "particularly egregious facts," the United States Supreme Court held the defendants were not entitled to qualified immunity even though the length of exposure was only six days. *Id.* at 9. In contrast, cases in this Circuit have held that temporary exposure to conditions less severe than those in *Taylor* did not rise to the level of an objectively serious deprivation. *See, e.g., Frye v. Pettis Cnty. Sheriff Dep't*, No. 02-1809, 2002 WL 17269194 (8th Cir. July 26, 2002) (no constitutional violation when a pretrial detainee was confined, for ten weeks, in a cell with a toilet that leaked both sewage and water, and the detainee only received blankets to help absorb the filth); *Goldman v. Forbus*, No. 00-2463WA, 2001 WL 838997 at *1 (8th Cir. Jul. 26, 2001) (no constitutional violation when, for six days, an arrestee was "forced to position his mattress (on the floor) near the toilet so that urine was sprinkled on him when his cellmates used the toilet"); *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996) (no constitutional violation when a pretrial detainee was held, for four days, in a cell with an

overflowing toilet that leaked raw sewage); *Whitnack,* 16 F.3d at 958 (no constitutional violation

when a convicted prisoner and detainee were held, for twenty-four hours, in a cell with a "toilet

[that] was covered with dried feces on both the inside and outside, the sink was covered with hair

and vomit, the floor was covered with garbage and rotting food, and the walls were covered with

dried human mucus"); *Mayfield v. Raymond*, No. 3:20-CV-03007, 2020 WL 7714715, at *17

(W.D. Ark. Dec. 29, 2020) (no constitutional violation when a pretrial detainee was held in cell,

for six days, without cleaning supplies).

> During his deposition, Plaintiff said cell M38L was:

> Filthy, trash everywhere, dirt everywhere, grime everywhere, food, feces.    It was
> just nasty.

(Doc. 128-4 at 15.)    However, when confronted with records showing ADC staff cleaned that cell

on July 27, 2022, prior to his arrival, Plaintiff said:

> I don't know what they did.    I don't know if they cleaned it or not.    Regardless,
> they didn't do it the right way or I wouldn't have got infected. You know, you got
> a pressurized spray and all of that with cleaning them cells when it comes to scabies.

(*Id.* at 17.)    This testimony is inconsistent with Plaintiff's allegation that grime, dirt, trash, etc.

were "everywhere."    Plaintiff says the cell was not sanitized to his satisfaction or in the manner

that would have prevented him from contracting scabies.    But, as already explained, there is <u>no</u>

evidence Plaintiff had scabies during the relevant time period in this lawsuit.    And, importantly,

there is <u>no</u> evidence, other than Plaintiff's pure speculation, that the skin condition he first reported

on August 22, 2023, was caused by living in cell M38L from July 27 to August 2, 2022.    *See*

*Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008) ("Because a § 1983 action is a type of tort

claim, general principles of tort law require that a plaintiff suffer some actual injury before he can

receive compensation"); *Smith*, 87 F.3d at 268 (8th Cir. 1996) (no constitutional violation found

when a prisoner failed to demonstrate he was actually harmed by the unsanitary conditions and

was no longer living in them); *Goldman*, 2001 WL 838997 (same); *Whitnack*,16 F.3d at 958 (same).

Because the conditions Plaintiff says he endured in cell M38L are a far cry from the particularly egregious facts in *Taylor* and there is no evidence he suffered an injury as a result of living there for six days, I conclude Defendants are entitled to qualified immunity from Plaintiff's conditions of confinement claim under both prongs of the qualified immunity analysis. *See Manning v. Ryan*, 13 F.4th 705, 707 (8th Cir. 2021) ("[c]learly established means that, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right," and the "existing precedent must have placed the statutory or constitutional question beyond debate"); *Thurmond v. Andrews*, 972 F.3d 1007, 1012 (8th Cir. 2020) ("clearly established" law is either a "controlling case or a robust consensus of cases of persuasive authority").

### C.    Injunctive Relief

Qualified immunity does not apply to a request for injunctive relief. *See Hamner,* 937 F.3d at 1176. In his Complaint, Plaintiff seeks an injunction requiring he receive medical treatment and proper sanitization for scabies. Because there is no evidence he had scabies, I conclude he is not entitled to such relief.

## VI.    CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1.    The Medical Defendants' Motion for Summary Judgment (Doc. 125) be GRANTED, and Plaintiff's Eighth Amendment and Arkansas Medical Malpractice claims against Defendants Douglas and Hatchett be DISMISSED with prejudice.

2.    The ADC Defendants' Motion for Summary Judgment (Doc. 128) be GRANTED,

and Plaintiff's Eighth Amendment claims against them be DISMISSED with prejudice.

3.      This case be CLOSED.

4.      The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting this Recommendation and the accompanying Judgment would not be taken in good faith.

Dated this 12th day of February 2024.


_____
JOE L. VOLPE
UNITED STATES MAGISTRATE JUDGE